UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:12-CR-067 JD |
| | ) | |
| MARGARITO FUENTES REYES (02) | ) | |

ORDER

On June 26, 2012, a detention hearing was held in this case before Magistrate Judge Christopher A. Nuechterlein. At the hearing, Judge Nuechterlein ordered the defendant. Margarito Fuentes Reyes, detained. *See* DE 44. After the Court continued the December 3, 2012 trial to January 14, 2013, Mr. Fuentes-Reyes filed a motion seeking review of the magistrate judge's detention order and also indicating that he had new evidence and changed circumstances relevant to detention. *See* DE 114. He subsequently clarified that rather than having the magistrate judge consider the new evidence in the first instance, he wished the undersigned to both review the original detention order and consider the new evidence. *See* DE 120. The Court held a hearing on December 12, 2012. *See* DE 131.

At the hearing, the government argued that Mr. Fuentes Reyes posed a substantial flight risk that no condition or combination of conditions of release would reduce, because he was facing a likely conviction (given the weight of the evidence), jail sentence (given the anticipated advisory guideline range), and ultimately removal from this country (given his status as an illegal alien), which give him a very strong incentive to flee, either from the country or into hiding, to avoid prosecution and punishment. The government argued that the weight of the evidence against Mr. Fuentes-Reyes was significant, relying on the transcript of a proffer to the

1

magistrate judge at the initial detention hearing, supplemented by a transcription and translation of two encounters between the defendant and undercover agents. According to the government, Mr. Fuentes-Reyes was involved in a statewide conspiracy to assist undocumented aliens obtain vehicle registrations, license plates, and titles by circumventing procedures implemented by the Bureau of Motor Vehicles to prevent individuals without valid social security numbers from obtaining these items. This was done by creating limited liability companies for aliens, obtaining a taxpayer identification number, and then registering the vehicles as if they belonged to the newly created company.

By way of evidence, the government proffered that in February and March 2012, several agents posing as undocumented aliens visited Mr. Fuentes-Reyes several times at a location in Elkhart, Indiana, and discussed registering a vehicle. *See* DE 125 at 10–13. The defendant quoted the various agents a price for obtaining registrations and plates; he also advised agents not to report the purchase price of their vehicle on their paperwork to avoid paying sales tax, suggested how the agents explain their commercial registration and plates to police if stopped with the license plates, explained how the registration process worked—registering the vehicles to a limited liability company—and advised the agents that it did not matter if their identification belong to someone else as long as it matched the name on the taxpayer identification number. *Id.* The government also provided information that there is currently an Immigration and Customs Enforcement detainer on Mr. Fuentes-Reyes but that there are no removal proceedings pending yet. Relative to the sentence that Mr. Fuentes-Reyes would face, if convicted, the statutory maximum sentence would be 30 years—10 on Count 1 and 20 on Count 2—and the guideline ranges would arguably be 78-97 months on Count 1 and 41-51 months on Count 2. The

government also provided the Court with information that one defendant in a parallel investigation had already received a sentence of 33 months. According to the pretrial services report, Mr. Fuentes-Reyes has ties to Goshen, Indiana, where his wife and adult children live, but also to Mexico, where he is a citizen and owns a residence.

Mr. Fuentes-Reyes, by counsel, challenged the weight of the evidence by the government, arguing that his defense will be that there was no conspiracy because there was no meeting of the minds. More significantly, he provided evidence to the Court of both his own medical ailments—particularly Type II diabetes—and his wife's serious medical condition. His wife, Isabel Rios Ahumada, recently had a large tumor removed from her breast and has had weekly check-ups with the doctor since, as well as ongoing symptoms. *See* DE 127. Her doctors have informed her that her condition is rare, that a tumor could develop again, and that if it does she might require additional surgery. According to medical records submitted by defense counsel, the tumor was benign, and defense counsel had no information that Ms. Ahumada had an established treatment plan requiring ongoing care and could not identify the "rare condition" at issue.

This Court conducts its review of the magistrate judge's detention order consistent with 18 U.S.C. § 3145(b). This Court's review of the order is *de novo* and must be supported by its own finding of facts and reasons for its decision. *See* 8 C.J.S. *Bail* § 99 (2010); *United States v. Jimenez*, 628 F.Supp. 808, 809 (N.D.Ill. 1986). In order to justify detention, the burden is on the government to prove either that the defendant is a flight risk or a danger to the community. *United States v. Levine*, 770 F.Supp. 460, 465 (N.D.Ind. 1991); *United States v. Leibowitz*, 652 F.Supp. 591, 596 (N.D.Ind. 1987). The statute governing detention in this case, 18 U.S.C. §

3142(g), provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

After considering these factors, the Court finds that pre-trial detention is appropriate. While the indicted offense in not a crime of violence, a controlled substance offense, or a firearm offense—and thus does not suggest that Mr. Fuentes-Reyes is a danger to the community—it is a serious offense that carries a substantial punishment. The weight of the evidence that Mr. Fuentes-Reyes was a member of a conspiracy to violate immigration and mail fraud laws is substantial, and the Court finds a reasonable likelihood of conviction. This prospect of conviction, combined with Mr. Fuentes-Reyes's ties to Mexico and to others in this country adept at evading detection by law enforcement, convince the Court that Mr. Fuentes-Reyes is

4

likely to flee the jurisdiction or go into hiding if ordered released.

Regarding Mr. Merino's history and characteristics, the Court notes that he has no criminal history and was not under any supervision at the time of the arrest. He has ties to the Goshen, Indiana area, including a wife and grown children, but also owns a home in Mexico. While the Court is sympathetic to Ms. Ahumada's medical condition and the special relationship between spouses, the Court does not believe that the medical condition at issue would alleviate the serious risk of flight in this case. There is no evidence that Ms. Ahumada's care requires her to remain in Goshen, Indiana, so the Court finds it just as likely that Mr. Fuentes-Reyes's wife and children would follow him into hiding or out of the country if given the chance. Likewise, Mr. Merino's diabetes, while a serious condition, does not require him to remain in Goshen to pursue an established course of treatment. Further, while a GPS tracking device would certainly alert probation officers if he removes the device, it will not be of much assistance in locating him if the device were removed. Therefore, the Court finds that the government has demonstrated, by a preponderance of the evidence, that Mr. Fuentes-Reyes is a serious flight risk and that no condition or combination of conditions will reasonably assure his appearance as required. *See* 18 U.S.C. § 3142(e).

For the aforementioned reasons, this Court concludes that pre-trial detention is appropriate for the Defendant in this case. The Motion to Review [DE 114] is denied.

SO ORDERED.

ENTERED:   December 18, 2012

    /s/ JON E. DEGUILIO
Judge
United States District Court